# 16-2750(L)

(consolidated with 16-2752)

## United States Court of Appeals
## for the Second Circuit

SPENCER MEYER, Individually and on behalf of those similarly situated,

*Plaintiff-Counter Defendant-Appellee,*

*v.*

UBER TECHNOLOGIES, INC.,

*Defendant-Counter Claimant-Appellant,*

TRAVIS KALANICK,

*Defendant-Appellant,*

ERGO,

*Third-Party Defendant.*

On Appeal From The United States District Court
For The Southern District Of New York, No. 15-cv-09796
Honorable Jed S. Rakoff Presiding

### APPELLANTS' REPLY BRIEF

Theodore J. Boutrous Jr.
   *Lead Counsel*
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Cynthia E. Richman
Joshua S. Lipshutz
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 955-8500

Reed Brodsky
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Appellant Uber
Technologies, Inc.*

Karen L. Dunn
  *Lead Counsel*
William A. Isaacson
Ryan Y. Park
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(202) 237-2727

Peter M. Skinner
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
(212) 446-2300

*Attorneys for Appellant Travis Kalanick*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................1

ARGUMENT .........................................................................................4

I.     This Court Reviews Contract Formation Issues De Novo. .........................4

II.    Plaintiff Assented To Uber's Terms And Conditions.................................8

    A.     Uber's Registration Process Provided Conspicuous Notice
         of the Terms and Conditions to Which Plaintiff Assented................8

    B.     A Reasonable Consumer Would Understand That
         Registering for Uber Entails Agreeing to Terms and
         Conditions.......................................................................11

    C.     Plaintiff Admitted Knowledge of the Terms as a Condition
         of Registration. ...............................................................21

III.   This Court Should Remand With Instructions To Compel Arbitration
       Of All Other Arbitrability Questions . ......................................24

CONCLUSION.....................................................................................28

CERTIFICATE OF COMPLIANCE.................................................................30

CERTIFICATE OF SERVICE ....................................................................31

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct 2304 (2013)...................................................................................4

*Andrews v. Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989) .....................................................................21, 22

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)......................................................................................4

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006) .......................................................................6

*Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*,
   189 F.3d 289 (2d Cir. 1999) ...............................................................5, 6, 24

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
   776 F.3d 126 (2d Cir. 2015) ........................................................................24

*CMS Inv. Holdings, LLC v. Castle*,
   2016 WL 4557115 (S.D.N.Y. Aug. 31, 2016).............................................25, 27

*Contec Corp. v. Remote Solution, Co.*,
   398 F.3d 205 (2d Cir. 2005) ........................................4, 23, 24, 25, 27

*Cullinane v. Uber Techs., Inc.*,
   2016 WL 3751652 (D. Mass. July 11, 2016) ....................................................15

*Deleon v. Verizon Wireless, LLC*,
   207 Cal. App. 4th 800 (2012) .......................................................................6

*Denney v. BDO Seidman, LLP*,
   412 F.3d 58 (2d Cir. 2005) ...........................................................................6

*DIRECTV, Inc. v. Imburgia*,
   136 S. Ct. 463 (2015)...................................................................................3

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995)...................................................................25

*Ford v. Bernard Fineson Dev. Ctr.,*
    81 F.3d 304 (2d Cir. 1996) .........................................................26

*Hancock v. Am. Tel. & Tel. Co.,*
    701 F. 3d 1248 (10th Cir. 2012) .................................................25

*HM DG, Inc. v. Amini,*
    219 Cal. App. 4th 1100 (2013) ....................................................6

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002).......................................................23, 24, 25

*Hu v. U.S. Dep't of Justice,*
    203 F. App'x 350 (2d Cir. 2006) ...............................................26

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,*
    146 F.3d 66 (2d Cir. 1998) ...........................................................8

*James v. McDonald's Corp.,*
    417 F.3d 672 (7th Cir. 2005) .....................................................24

*Lainer v. Uber Techs. Inc.*
    No. 2:15-cv-09925-BRO-MRW (C.D. Cal.) ..............................16

*Long v. Provide Commerce, Inc.,*
    245 Cal. App. 4th 855 (2016) ..........................................7, 17, 18

*Mohamed v. Uber Techs., Inc.,*
    836 F.3d 1102 (9th Cir. 2016) .....................................................3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983).......................................................................26

*Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38,*
    351 F.3d 43 (2d Cir. 2003) ...................................................24, 26

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016) ...........................................9, 10, 20

iii

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Norton v. Sam's Club*,
    145 F.3d 114 (2d Cir. 1998) ....................................................................9, 10, 27

*Register.com, Inc. v. Verio*,
    356 F.3d 393 (2d Cir. 2004) ..............................................................................10

*Rent-A-Center West v. Jackson*,
    561 U.S. 63 (2010)...............................................................................................24

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011) ..............................................................................26

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) .................................... 5, 7, 14, 16, 18, 19, 20

*Selden v. Airbnb, Inc.*,
    2016 WL 6476934 (D.D.C. Nov. 1, 2016) ......................................11, 12, 13, 14

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003) ..............................................................................25

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002) .........................................................4, 7, 15, 16, 20

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011).................................................................17

*Taussig v. Baude & Haslett*,
    134 Cal. 260 (1901) .................................................................................7, 11, 12

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*,
    241 F.3d 135 (2d Cir. 2001) ................................................................................6

*Vacold LLC v. Cerami*,
    545 F.3d 114 (2d Cir. 2008) ......................................................................4, 5, 6

*Via Viente Taiwan, L.P. v. United Parcel Serv., Inc.*,
    2009 WL 398729 (E.D. Tex. Feb. 17, 2009).......................................................14

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987 (1972) ...............................................................................15

# TABLE OF AUTHORITIES *(continued)*

Page(s)

## Statutes

Cal. Civ. Code § 19 ............................................................................ 15, 17

Cal. Civ. Code § 1589 ............................................................................ 17

## Other Authorities

Jed. S. Rakoff, *Why You Won't Get Your Day in Court*, NEW YORK
REVIEW OF BOOKS, Nov. 24, 2016, *available at*
http://www.nybooks.com/articles/2016/11/24/why-you-wont-get-
your-day-in-court ............................................................................. 3

Professor Eric Goldman & Venkat Balasubramani, *Anarchy Has
Ensued In Courts' Handling of Online Contract Formation*,
Technology & Marketing Law Blog (Aug. 30, 2016), *available at*
http://blog.ericgoldman.org/archives/2016/08/anarchy-has-ensued-
in-courts-handling-of-online-contract-formation-round-up-
post.htm ............................................................................................ 18

v

## INTRODUCTION

Plaintiff downloaded the Uber software app on his smartphone, signed up for a new Uber account, entered his credit card information, and clicked the "REGISTER" button. That button was located just a few millimeters above a notice stating that "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," and providing hyperlinks to the contractual terms. The notice was the only complete sentence on the entire screen, and comprised 15 of the 32 words on the page. Plaintiff admitted in his Complaint that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions." AA28 ¶ 29; *accord* AA48 ¶ 29. Plaintiff then went on to use the Uber app to obtain rides all over the world without any reported difficulties using the app's many functions, notwithstanding the size of his smartphone screen or the font size of the words displayed there. Yet Plaintiff asks this Court to rule that he never agreed to *any* terms or conditions—that *no contractual terms at all* governed his repeated use of the app, his relationship with Uber, the rides he took, the fares for those rides, or, indeed, Uber's ability to charge the credit card he provided.

Plaintiff's argument fails not only as a matter of common sense, but as a matter of law. As numerous courts have consistently recognized—for over one hundred years—simple and clear disclosures like the one Uber provided are more

1

than adequate to form a contract, particularly where the offeree has taken affirmative steps to register for an online service by, for example, clicking a registration button and providing their credit card information. Uber's registration screen, which contained a single, complete sentence informing users how they could access Uber's terms, was nearly identical to the screens in many other cases in which courts have held that a valid contract was formed. The cases Plaintiff cites—the vast majority of which involved circumstances where the offeree would not have understood that a contract was contemplated, much less that he was assenting to such a contract through his actions (or inaction)—do not compel a different result here.

Moreover, it is apparent from the district court's decision that its ruling striking down the parties' contract was the direct result of the district court's strong dislike for arbitration, a singling out of arbitration that is specifically prohibited by federal law. The district court framed the issue as whether Plaintiff "agreed to waive his right to a jury trial or to submit to mandatory arbitration," rather than whether Plaintiff assented to the contract as whole, and then, based on this improper framing of the issue, "indulg[ed] every reasonable presumption against" arbitration. SPA1. Later, in its order granting Uber's motion to stay the district court proceedings pending this appeal, the district court sought to recast its earlier opinion in a more neutral light. *See* Appellee's Br. ("AB") 24–27. But any doubts

regarding the district court's antipathy to arbitration were dispelled by an article the district judge authored less than three months after the opinion under review. *See* Jed S. Rakoff, *Why You Won't Get Your Day in Court*, NEW YORK REVIEW OF BOOKS, Nov. 24, 2016, *available at* http://www.nybooks.com/articles/2016/11/24/why-you-wont-get-your-day-in-court.  In that article, the district judge derided the "*supposed* federal policy favoring the speed and efficiency of arbitration," described the "strained reasoning" of the Supreme Court's decisions interpreting the Federal Arbitration Act ("FAA"), called the Supreme Court's arbitration jurisprudence a "disturbing" and "insidious" trend, and urged that there was "no reason short of ignorance or ideology for judges to continue to give their approval to devices that effectively deny Americans access to their courts." *Id.* (emphasis added).

Under the FAA, the district court's hostility toward arbitration is contrary to federal law and had no place in its ruling.  *See DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act.  Consequently, the judges of every State must follow it."); *see also Mohamed v. Uber Techs., Inc.*, 836 F.3d 1102, 1111 (9th Cir. 2016) ("The district court does not have the authority to ignore circuit court precedent, and neither do we.").  The Supreme Court has repeatedly instructed that lower courts must "give due regard . . . to the federal

policy favoring arbitration" and the efficiencies it creates. *DIRECTV*, 136 S. Ct. at 470 (citation and internal quotation marks omitted). It is implausible the district court would have ruled the way it did, invalidating the entire contract between the parties, if no arbitration agreement were at stake—and that is a direct violation of repeated Supreme Court admonitions. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (prohibiting rules "that derive their meaning from the fact that an agreement to arbitrate is at issue"); *see also*, *e.g.*, *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308–09 (2013).

Finally, Plaintiff does not dispute that the agreement at issue clearly and unmistakably delegates all arbitrability issues to the arbitrator. Accordingly, the Court should remand with instructions to compel arbitration of Plaintiff's claims, including all of Plaintiff's arbitrability objections. *See Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

## ARGUMENT

## I.   This Court Reviews Contract Formation Issues De Novo.

Plaintiff argues that this Court's hands are effectively tied on appeal, purportedly limited to clear-error review of the district court's findings and legal conclusions below. That is false. The applicable standard of review for questions of contract assent is well-established: "[t]he determination of whether parties have contractually bound themselves to arbitrate a dispute . . . ***is a legal conclusion*** . . .

*subject to de novo review*." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002) (emphasis added); *accord Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016); *Vacold LLC v. Cerami*, 545 F.3d 114, 123 (2d Cir. 2008) ("Under New York law, whether a binding agreement exists is a legal issue, not a factual one."); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295 (2d Cir. 1999) (same). Indeed, elsewhere in his brief, Plaintiff emphasizes that "this Court and other Circuits frequently" decide contract formation issues "as a matter of law." *See* AB58 (collecting cases).

In this case, the district court *made no factual findings* requiring deference on appeal. The evidence at issue—screen shots of Uber's registration process as it appeared on Meyer's smartphone (AA314–20) and copies of Uber's Terms & Conditions (AA111–12)—was undisputed. *See* SPA10–14 (recounting the undisputed facts of the case). As Plaintiff concedes, the district court did not convene an evidentiary hearing or trial.[1] *See* AB34. Nor did it need to. "This case does not present disputes about whether particular communications were sent, whether particular words were uttered, or whether the parties entered into prior oral

---

[1] Plaintiff suggests that the district court "examined witnesses" regarding the motion to compel arbitration. AB14 n.6. Not so. Plaintiff cites portions of a hearing transcript addressing an *unrelated* motion for relief against third party Ergo. *See* Supplemental Appendix ("SA") at 120–128. When the court heard argument on the motion to compel arbitration, the court examined no witnesses at all. *See* AA402–59.

agreements. None of the facts is disputed[.]" *Vacold*, 545 F.3d at 123 (applying New York law); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 & n.7 (2d Cir. 2012) (applying California law and observing that "[t]here are no . . . findings of fact by the district court that we review or rely upon on appeal" where the written evidence, consisting of a confirmation screen and email, was undisputed). "The dispute, instead, is about the ***legal significance*** of those [undisputed] facts." *Vacold*, 545 F.3d at 123 (emphasis added).[2]

Plaintiff also contends that issues of "mutual assent" and "reasonable notice" are questions of fact. AB36–37. Once again, Plaintiff is mistaken. "Mutual assent is determined under an objective standard," and where, as here, "the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013).[3] Likewise,

---

[2]   The cases cited by Plaintiff reflect circumstances in which contract formation hinged on disputed factual evidence—circumstances not presented here. *See*, *e.g.*, *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146–50 (2d Cir. 2001) (addressing whether parties formed a contract in "ad hoc" negotiations and whether "the weight of the evidence" demonstrated timely approval); *Denney v. BDO Seidman, LLP*, 412 F.3d 58, 64–66 (2d Cir. 2005) (reversing findings of "mutual fraud" based on conflicting testimony). Further, in *Chelsea Square Textiles*—a case cited repeatedly by Plaintiff—this Court concluded "that the determination that parties have contractually bound themselves to arbitrate disputes . . . *is a legal conclusion subject to our de novo review*." 189 F.3d at 295 (emphasis added).

[3]   *Accord Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012) ("[Contract formation] is a question of law for the court."); *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 208 (2006) (same).

whether the design of a website "put a reasonably prudent Internet consumer . . . on notice of the . . . agreement's existence and contents" is a "pure question of law" where, as here, "the material evidence consists exclusively of screenshots from the website . . . and the authenticity of the[] screenshots is not subject to a factual dispute." *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 863 (2016); *see also Specht*, 306 F.3d at 26, 28–30 (whether "user[s] . . . had reasonable notice of and manifested assent to" licensing terms are "legal conclusion[s]").

Further, Plaintiff does not dispute that the issue of *context*—i.e., whether Plaintiff's registration with Uber and the entry of his credit card information on the "Payment" screen put Plaintiff on notice that he was entering into a contract— likewise is a question of law reviewed de novo. *See Schnabel*, 697 F.3d at 118–19, 127 & n.7 (reviewing de novo whether "the presentation of [contract] terms at a place and time that the consumer will associate with the initial purchase or enrollment . . . indicates to the consumer that he or she is . . . subject to additional terms and conditions"); *Chelsea Square Textiles*, 189 F.3d at 296; *Taussig v. Bode & Haslett*, 134 Cal. 260, 265 (1901) (holding as a matter of law that a receipt with a notice of additional contractual terms created a "duty of [the parties receiving the receipt] to take note of its contents"); Appellants' Opening Br. ("AOB") 31–38.

7

## II. Plaintiff Assented To Uber's Terms And Conditions.

### A. Uber's Registration Process Provided Conspicuous Notice of the Terms and Conditions to Which Plaintiff Assented.

Plaintiff relies extensively on the district court's statement that the notice Uber provided on its Payment screen was "barely legible" (AB16)—a conclusion drawn in large measure from the district court's scaled down version of the Payment screen. But Uber's registration screen speaks for itself. As this Court can plainly see from the properly authenticated image[4] in the record (AA319), reprinted in Uber's Opening Brief (AOB8, 40), the simple design of Uber's registration screen made it easy to see and read all 32 words on the screen. If this Court permits, Uber will show the panel the same image on actual smartphones at the oral argument, so the panel can see for itself the crystal-clear image that Plaintiff would have seen when registering for an Uber account.[5]

---

[4] Plaintiff suggests that Uber and Mr. Kalanick did not authenticate the screen shots as depicting the specific sign-up process in which Plaintiff Meyer engaged. AB56–57. But that contention is readily dispelled by the declaration authenticating Uber's images. *See* AA314–16 (stating that Vincent Mi "reviewed the registration records and was able to identify the dates and methods *by which Plaintiff Spencer Meyer registered for Uber*," describing those methods in detail, and authenticating images of the screens that Plaintiff navigated to complete his registration) (emphasis added). Indeed, the district court rejected Plaintiff's argument by accepting the images as accurate depictions of the sign-up process as it appeared when Meyer registered to use the Uber App. SPA10–14.

[5] Plaintiff claims that Uber "exaggerated" the size of images submitted to the district court (AB49–50), but that is false. When Uber filed its motion to compel arbitration, it included full-page screenshots that were obviously not

In addition, the district court's statement that "the Uber registration process . . . involved a considerably more obscure presentation of the relevant contractual terms" than the Amazon screen at issue in *Nicosia* is again belied by the images themselves. As this Court can plainly see for itself (*see* AOB28), the image of Amazon's cluttered screen—with "between fifteen and twenty-five" hyperlinks, terms presented far removed from the actual transaction, at both the very top and very bottom of the page, and displayed long *after* the user had entered into a contractual relationship with Amazon—stands in sharp contrast to Uber's simple and straightforward registration screen. *See Nicosia*, 834 F.3d at 237, 241. As even Plaintiff acknowledges, "the *Nicosia* court noted that the notice was 'obscured,' by 'numerous other links' 'in several different colors, fonts, and locations.'" AB44. No such distractions plagued Uber's "Payment" screen. Instead, Uber's "Payment" screen contained a *single* sentence informing users that

---

meant to depict the actual size of the screen. At that time, Plaintiff had not challenged the formation of his agreement with Uber; indeed, he conceded it in his complaint. Thus, the size of the images was unimportant. As Plaintiff concedes (AB50), once Plaintiff began disputing his assent to the Terms of Service, and screen size became an issue, Uber submitted a scaled image to the court (*see* AA560). Plaintiff never disputed the accuracy of those exhibits. In the absence of any objection, the district court plainly erred by taking it upon itself to create an image that no party had authenticated, particularly where this new image was of significantly lower resolution than images in the record. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 71 (2d Cir. 1998). Plaintiff also accuses Uber of "repeat[ing]" this "tactic" in its Opening Brief. AB50. But the image in the Opening Brief is the exact same scale as the image the district court created. AOB40.

registration was subject to Uber's Terms of Service, as well as a *single* hyperlink permitting users to access those terms. *See* AA319. On its face, and for the many reasons described in Appellants' Opening Brief, Uber's screen was significantly more likely to draw consumers' attention to the Terms of Service hyperlink than Amazon's screen.[6]

Moreover, as Plaintiff also acknowledges (AB33), this Court has never held that assent requires clicking a button or checking a box marked, "I agree." *See Nicosia*, 834 F.3d at 220. In *Register.com, Inc. v. Verio*, for example, this Court held that there is "no reason why the enforceability of the offeror's terms should depend on whether the taker states (or clicks), 'I agree.'" 356 F.3d 393, 403 (2d Cir. 2004). The Court held the same thing in *Nicosia*, 834 F.3d at 220. Here, this Court should conclude that Plaintiff assented to Uber's Terms of Service when he took the affirmative step of clicking "REGISTER" to create an Uber account.

---

[6] Uber has never argued that the validity of its registration process should rise or fall with *Nicosia*, as Plaintiff contends. AB42–43. To the contrary, Uber has argued consistently that the disclosures at issue here were significantly more conspicuous than those at issue in *Nicosia. See, e.g.*, AA410, AA541. Plaintiff and his *amici curiae* also argue that "readily available alternative designs" bear on whether Plaintiff assented to Uber's terms and conditions. AB39–40; Amicus Brief of Public Justice 18–23. But this Court has never held that a party's assent to a contract turns on the design of other contracts he never saw.

### B. A Reasonable Consumer Would Understand That Registering for Uber Entails Agreeing to Terms and Conditions.

All of Plaintiff's arguments regarding the conspicuousness of Uber's terms and his purported lack of assent rely on cases involving transactions in which the offeree had no reason to expect that his actions (or inaction) would subject him to new terms and conditions. Here, however, Plaintiff knew or should have known that registering for Uber's services would require him to accept Uber's terms and conditions. "Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider." *Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016). Plaintiff has not denied—and cannot deny—that he knew he was required to agree to Uber's terms to use Uber's services. Indeed, only ten days after using Uber's services to obtain a ride (*see* AA379–83), Plaintiff admitted in his Complaint that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions." AA28 ¶ 29; *see also* AA48 ¶ 29.

Under these circumstances, a prudent consumer, knowing full well that his use of the Uber app was likely subject to terms and conditions, would have read the text on Uber's "Payment" page when he entered his credit card information to register for Uber's services. The overwhelming consensus of courts that have addressed contracts formed under analogous circumstances—including numerous

11

cases involving registration for online services—support Uber's position that Plaintiff agreed to Uber's Terms of Service by registering. *See* AOB20–25.

Contrary to what Plaintiff and his *amici* argue, this is hardly a novel principle of contract law. The California Supreme Court's decision in *Taussig v. Bode & Haslett*, 134 Cal. 260 (1901)—decided 115 years ago and cited by this Court in *Specht*, 306 F.3d at 17—is instructive. There, the respondent sent 64 barrels of spirits to the appellant, the proprietor of a warehouse. *Id*. at 263. After the barrels arrived, the respondent's agent inspected them and was issued a receipt stating that "loss by leakage was at the owner's risk." *Id*. at 265. The Court found it "clear that the notice is a part of the contract," even though the respondent's agent had not read or signed it. *Id*. The notice in *Taussig*, reproduced to the right as it appeared in the reporter version of the opinion, was extremely inconspicuous compared to Uber's notice. The Court nonetheless observed that the notice "was printed plainly on the face of the receipt" and emphasized that "[t]he whole paper [was] extremely brief." *Id*. at 265–66. Under these circumstances, "[i]t was the duty of the respondents to take note of its contents," and no "evidence . . . would have



12

been admissible to show that the respondents had failed to do what their duty required them to do." *Id.* "The presumption, therefore, is that they did read" the notice. *Id.*

Just last month, yet another court held that a user assented to a company's terms and conditions when he was presented with a link to the terms at the time he registered for the company's services on his mobile device. In *Selden v. Airbnb, Inc.*, the District Court for the District of Columbia considered whether the plaintiff agreed to arbitration when he clicked "Sign up with Facebook" to register for a residential rental service called Airbnb. 2016 WL 6476934, at *2. Airbnb's registration screen, depicted to the right as it appeared in the Appendix of the decision, contained three buttons labeled in descending order "Sign up with Facebook"; "Sign up with Google"; and "Sign up with Email." *Id.* at *9. The plaintiff registered by clicking the "Sign up with Facebook" button, the uppermost button on the screen.



13

*Id*. at *2.  Below the lowermost button was an admonition reading, "By signing up, I agree to Airbnb's Terms of Service, Privacy Policy, Guest Refund Policy, and Host Guarantee Terms."  *Id*. at *2, *9.  This admonition contained a total of four hyperlinks to various policies and terms, as compared with the single hyperlink in Uber's admonition.  *Id*. at *2.  The hyperlinks on Airbnb's registration screen were neither capitalized nor underlined.  *See id*. at *9.

Applying California law, the court held that "Airbnb's mobile sign-up screen adequately placed Selden on notice of Airbnb's Terms of Service, and that he assented to those terms by clicking the sign-up box and using the service." *Id*. at *5.  The court acknowledged that the text reading "By signing up, I agree to Airbnb's Terms of Service" was "not directly under the first or second alternative sign-up buttons."  *Id*.  But it nonetheless concluded that "any reasonably-observant user would notice the text and accompanying hyperlinks," such that "even if [the plaintiff] only clicked 'Sign up with Facebook' at the top of the page, he would have seen the relevant text from a quick glance down the rest of the page."  *Id*.

In reaching this conclusion, the Court took notice of the fact that "[t]he act of contracting for consumer services online is now commonplace in the American economy."  *Id*.  It observed,

> Any reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider.  Notifications to that effect—be they check boxes or hyperlinks—abound.  To be sure, few people may

14

> take time to actually read the user agreements. But ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.

*Id.* The Court came to this conclusion even though the record was silent regarding the plaintiff's "particular history with e-commerce." *Id.*

Just as in *Selden*, "the prevalence of online contracting in contemporary society" supports the conclusion that Plaintiff "was on notice that he was entering [into] a contract with [Uber] in this case." *Id.*; *see also Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016) (finding that plaintiff assented to arbitration agreement contained in Uber's Terms of Service by registering for an account and observing that "[a] reasonable user who cared to pursue the issue would have inquiry notice of the terms of the Agreement challenged by the plaintiffs."); *Lainer v. Uber Techs. Inc.*, No. 2:15-cv-09925-BRO-MRW, Dkt. No. 25 (C.D. Cal. May 11, 2016) (enforcing arbitration agreement in Uber's Terms of Service); *Via Viente Taiwan, L.P. v. United Parcel Serv., Inc.*, No. 4:08-CV-301, 2009 WL 398729, at *2 (E.D. Tex. Feb. 17, 2009); *cf. Schnabel*, 697 F.3d at 125 n.15.

Having accepted the benefit of Uber's services, Plaintiff also "accepted, by his conduct, whatever terms the offer contain[ed]," even if he did "not know all of its terms." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972). Applying this fundamental principle of contract law does not

"sidestep the elements of mutual assent," as Plaintiff asserts. AB46. Rather, it recognizes what Plaintiff admitted in his complaint: that he was on notice that users are required to agree to Uber's terms and conditions to register. AA48 ¶ 29.

Nor does applying this principle "water down the *Specht* notice-and-assent standard for apps" or "disturb [*Specht*'s] careful balance," as Plaintiff's *amici curiae* contend. Amicus Br. of Public Justice 7. In fact, *Specht* acknowledged the controlling principle here—that an offeree who has constructive notice of the existence of contract terms is bound by those terms, even if he does not read them. *See Specht*, 306 F.3d at 17 (citing cases); AOB31–32. And *Specht* recognized that whether the offeree assented to such terms depends on "the transactional context in which the offeree verbalized or acted." 306 F.3d at 30. Where, as in this case, the offeree "has actual notice of circumstances sufficient to put a prudent man upon inquiry" that he is agreeing to terms and conditions, he "has constructive notice" of those terms if, by inquiring into them, "he might have learned" them. *See id*. at 31 (quoting Cal. Civ. Code § 19).

That this principle did not carry the day in *Specht*—a browsewrap case in which the plaintiff was alleged to have accepted contract terms under very different circumstances—says nothing about the proper application of that principle here. The users in *Specht* were not bound by the license terms at issue because the transaction gave them *no reason to suspect* there were any license

16

terms. Unlike Plaintiff, who entered his credit card information and clicked "REGISTER" on a page containing a clearly visible disclosure, the users in *Specht* merely downloaded free software without any notice that doing so would bind them to terms.[7] Notably, in *Specht* the "[p]laintiffs testified, and defendants did not refute, that plaintiffs were in fact unaware that defendants intended to attach license terms to the use of" the software. *Id*. at 32. That is markedly different from this case, where Plaintiff admitted that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions." AA48 ¶ 29.

Under the circumstances of this case, it was incumbent on Plaintiff to read the brief text on Uber's "Payment" page before entering his credit card information and registering. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011) (concluding that plaintiff assented by clicking a button to register and rejecting claim "that [plaintiff] comes within the exception to the rule that failure to read a contract is not an excuse 'when the writing does not appear to be a contract and the terms are not called to the attention of the recipient'") (quoting *Marin Storage & Trucking v. Benco Contracting & Eng'g*, 89 Cal. App. 4th 1042,

---

[7] Plaintiff argues that this case is analogous to *Specht* because "Uber users may likewise download the App for free." But unlike the free download in *Specht*, Uber users like Plaintiff enter their credit card information when signing up for an account because *use* of the Uber service is *not* free. A reasonable consumer would understand that entering credit card information and clicking "REGISTER" was likely to form a contract that would govern such transactions.

1049–50 (2001)). Had he done so by clicking the conspicuous hyperlink on that screen, he would have learned the specific terms of the contract to which he assented. This is all California law requires. *See* Cal. Civ. Code §§ 19, 1589.

Plaintiff's *amici curiae* repeatedly and erroneously analogize Uber's agreement to the browsewrap at issue in *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016). But there is no resemblance between the website in *Long* and Uber's registration process. The defendant in *Long* argued that the plaintiff assented to an arbitration provision in the defendant's terms of use merely by placing an order on the defendant's website. The link to the contract terms was camouflaged in "light green typeface on the website's lime green background" (*id.* at 860), and there was no other indication on the site that any terms were contemplated, much less that placing an order manifested assent to them. *Id.* at 859–61. Unlike the plaintiff in *Long*, who merely made a routine purchase on a website, Plaintiff here set out to form a forward-looking relationship with Uber by registering for its services. And unlike the website in *Long*, Uber's registration screen stated explicitly, in clearly legible text, that agreeing to the Terms of Service was a condition of creating an account, something that Plaintiff would have understood—and did understand—based on the context of the transaction.[8]

---

[8] The law professors writing as *amici* in support of Plaintiff are the same law professors who repeatedly take positions in arbitration cases that are rejected by the U.S. Supreme Court. *See, e.g.*, Brief of Professors as *Amici Curiae* in

Plaintiff also relies on *Schnabel*, but that decision supports Uber's arguments. In *Schnabel*, this Court emphasized that presenting terms to consumers at the time they enter their credit card information to enroll in services places consumers on notice that they are "employing such services subject to additional terms and conditions that may one day affect [them]." 697 F.3d at 127. The plaintiffs in *Schnabel* were enrolled in an online rewards program after a third party transmitted their credit card information to the defendant; they were not required to re-enter their credit card information to enroll in the program. *Id*. at 114–15. The defendant argued that the plaintiffs assented to arbitration when they later received an "unsolicited email" containing an arbitration provision and failed to cancel their memberships. *Id*. at 123. This Court rejected that argument. *Id*. Emphasizing that the "arbitration provision . . . was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of" the program, the Court

---

Support of Respondents, *Am. Express Co. v. Italian Colors Rest.*, 2013 WL 390981 (U.S. Jan. 29, 2013) (submitted by Alexander H. Schmidt, Esq., and signed by Professor Hay, among others); Brief of Professors as *Amici Curiae* in Support of Respondents, *AT&T Mobility LLC v. Concepcion*, 2010 WL 3973891 (U.S. Oct. 6, 2010) (signed by Professors Bix, Chomsky, Fishman, Hart, Knapp, Linzer, and Neumann-Jirn). Their views on issues of arbitrability and contract formation are disputed by many other professors. *See, e.g.*, Brief *Amici Curiae* of Law Professors in Support of Petitioner, *AT&T Mobility LLC v. Concepcion*, 2010 WL 3183856, at *5–10 (U.S. Aug. 9, 2010); Professor Eric Goldman & Venkat Balasubramani, *Anarchy Has Ensued In Courts' Handling of Online Contract Formation*, Technology & Marketing Law Blog (Aug. 30, 2016), *available at* http://blog.ericgoldman.org/archives/2016/08/anarchy-has-ensued-in-courts-handling-of-online-contract-formation-round-up-post.htm.

found that "a reasonable person would not be expected to connect the [terms] . . . with the contractual relationship he or she may have with the service provider [.]" *Id*. at 127.

That reasoning does not apply here. The Court in *Schnabel* did not question that the plaintiffs would have been bound if they had been presented with the terms and asked to enter their credit card information when they enrolled, as Plaintiff was here. Indeed, the Court suggested that this was the *preferred* method of forming online contracts. *Id.* ("the initial purchase or enrollment . . . indicates to the consumer that he or she is taking such goods or employing such services subject to additional terms and condition").

This fact, and several others, also distinguishes this case from *Nicosia*. The plaintiff in *Nicosia*—like the plaintiffs in *Specht*, *Long*, and *Schnabel*—had no reason to expect that he would be subject to new terms *vis-à-vis Amazon* at the time he purportedly used Amazon to purchase a product, years after his initial enrollment. *See* 834 F.3d at 226–27. Like the post-enrollment email in *Schnabel*, this transaction would not have raised a "red flag" that the plaintiff was agreeing to a new and "legally significant alteration to the terms and conditions of the relationship" *with Amazon*. *Schnabel*, 697 F.3d at 127.[9]    Here, by contrast,

---

[9]  Plaintiff argues that this case and *Nicosia* are similar because both cases involved use of a credit card. Not so. The purchasing page at issue in *Nicosia* did not require a user to enter credit card information at all; credit card

Plaintiff agreed to Uber's terms and conditions at the exact moment when users are routinely asked to agree to terms and conditions—at the time of his initial enrolment, when he entered his credit card information and clicked the "REGISTER" button. *See id.*[10]

### C. Plaintiff Admitted Knowledge of the Terms as a Condition of Registration.

Tellingly, Plaintiff makes no attempt to explain his *twice*-repeated statement in the Complaint and Amended Complaint that "[t]o become an Uber account holder, an individual first must agree to Uber's terms and conditions." AOB18–19. Plaintiff originally sued only Mr. Kalanick, a strategic decision the district court recognized was aimed at *avoiding* Plaintiff's contract with Uber. *See* ECF No. 134 at 31. Only after Uber was joined as a defendant and sought to enforce the

---

information would come into play if—and only if—a user wanted to "edit" his payment information. 834 F.3d at 236. More to the point, the circumstances of the user's interaction with the website were entirely different. The plaintiff was simply using Amazon's website in the normal course (i.e., using to purchase goods from third parties); he was *not* signing up to use Amazon's service. Nothing about the transaction put the consumer on notice that he was assenting to new terms and conditions *vis-à-vis* the service provider.

[10] Plaintiff argues he was not on notice that he was assenting to Uber's terms because Uber's screen lacked "parallel wording as between the 'Register' button and the statement 'By creating an Uber account you agree to the Terms of Service & Privacy Policy.'" AB45. But no reasonable consumer could have seen that sentence, entered his credit card information, and clicked "REGISTER" without understanding that he was thereby "creating an Uber account" and "agree[ing] to the Terms of Service & Privacy Policy." *See* Amicus Brief of Internet Association and Consumer Technology Association 9–11.

21

arbitration agreement did Plaintiff deny the existence of the contract. Plaintiff's prior statements, in which he concedes the very contract he now disputes, should be treated as party admissions.[11]  *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).

Plaintiff contends that the district court considered and rejected these statements as "admissions," but the court did no such thing. Instead, the district court mischaracterized the issue as one of "waiver"—namely, whether Plaintiff's statements were "intended as a waiver" of Plaintiff's "right to argue that [he] was never adequately notified of the alleged agreement to arbitrate." SPA9–10. But that is beside the point. The issue has never been whether Plaintiff "waived" his *right to argue* that he was unaware of the terms and conditions—it is whether Plaintiff's prior contrary statements have legal significance. The district court's procedurally improper decision to amend Plaintiff's statement out of the Amended Complaint "does not make [the statement] any the less an admission." *Andrews*, 882 F.2d at 707. Indeed, "[a] party . . . cannot advance one version of the facts in [his] pleadings, conclude that [his] interests would be better served by a different version, and amend [his] pleadings to incorporate that version[.]" *Id.*

---

[11]  Indeed, even after Uber and Mr. Kalanick filed their motions to compel arbitration, Plaintiff's counsel reaffirmed the allegation in the complaints, stating that his client "had a contract with Uber" and "[t]hat contract had an arbitration clause." Hearing Tr. (June 16, 2016), ECF Dkt. 94 at 15.

The district court also dismissed these admissions—without explanation—as "read . . . out of context" (SPA9), yet the context only *underscores* just how probative Plaintiff's statements about the Terms of Service were. Plaintiff volunteered this information in a section of his complaint explaining Uber's registration process and the creation of the contractual relationship between riders and Uber that forms the very basis of Plaintiff's antitrust claim. And he did so *months* before any party moved to compel arbitration or challenged the formation of the contract. These circumstances are precisely what make Plaintiff's statements so compelling.

Finally, Plaintiff contends that Uber waived this argument because it purportedly was "buried" in a single footnote in Uber's Opening Brief. AB51. Not so. Uber underscored the importance of Plaintiff's admissions *at least a half-dozen times* throughout its Opening Brief. *See*, *e.g.*, AOB2, 4, 12, 18–19, 32.

## III. This Court Should Remand With Instructions To Compel Arbitration Of All Other Arbitrability Questions.

Plaintiff does not dispute that the Arbitration Agreement delegates all remaining arbitrability issues to the arbitrator. *See* AOB42–45. Accordingly, if this Court agrees that a contract was formed, the Court should remand with instructions to compel arbitration of Plaintiff's claims, including all of Plaintiff's objections to arbitration. *Contec*, 398 F.3d at 208.

Plaintiff fails to address the delegation issue *at all* in his brief, thereby confirming that this Court should enforce the delegation clause. *See* AB57–64. ***First***, Plaintiff does not dispute that the parties' Arbitration Agreement "clearly and unmistakably" delegates all arbitrability questions to the arbitrator, and that those questions must therefore be addressed by the arbitrator in the first instance. *See Rent-A-Center. W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 129–30 (2d Cir. 2015); AOB42–45. ***Second***, Plaintiff does not dispute that *every remaining issue*—including waiver— is a "gateway" arbitrability question. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002) (questions of arbitrability are *not* for the courts if "the parties clearly and unmistakably provide otherwise"); *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 46 (2d Cir. 2003) ("defenses to arbitrability such as waiver, estoppel, or delay" are "questions properly decided by arbitrators"); *Contec*, 398 F.3d at 209; AOB43–45.

Plaintiff's remaining arguments are meritless. Plaintiff first contends that "no case . . . in this Court" or any other appellate court "has concluded that an agreement was binding" and then "instructed the district court to enter an order compelling arbitration." AB58. That is false. *See*, *e.g.*, *Chelsea Square Textiles*, 189 F.3d at 295–97 (reversing lower court's order finding lack of assent and "direct[ing] the parties to proceed to arbitration" on remand); *accord Hancock v. Am. Tel. & Tel. Co.*, 701 F. 3d 1248, 1256–58, 1261 (10th Cir. 2012); *James v. McDonald's Corp.*, 417 F.3d 672, 676–78 (7th Cir. 2005). Remanding with instructions to send all remaining arbitrability questions to the arbitrator is particularly appropriate where, as here, the parties' agreement includes a valid delegation provision. *See*, *e.g.*, *Contec*, 398 F.3d at 208–11 (sending all outstanding issues to the arbitrator on remand); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121–25 (2d Cir. 2003) (same).

Plaintiff next argues that the Court should not address *any* arbitrability issues because "the district court must make factual findings on the waiver questions." AB60–61. But neither this Court *nor* the district court should address any arbitrability questions; as Plaintiff does not dispute, all such questions have been delegated to the arbitrator. A remand for fact-finding is thus unnecessary and improper, and this Court should say so. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942–44 (1995) ("the question 'who has the primary power to decide

arbitrability'" presents a legal question that "turns upon what the parties agreed about that matter"); *Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 (2d Cir. 1996) (this Court "reserve[s] considerable discretion to review purely legal questions"). Moreover, Plaintiff does not dispute that resolving the delegation issue now would conserve judicial resources, prevent further delay by avoiding additional interlocutory appeals, and facilitate the FAA's "intent . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); AOB42–43.

Plaintiff also argues that waiver by litigation conduct always must be decided by a court rather than an arbitrator. That too is incorrect. Where the parties delegate "all" arbitrability issues to the arbitrator, the issue of waiver by litigation conduct—like any other arbitrability question—must be decided by the arbitrator. *See Howsam*, 537 U.S. at 83–84 ("allegations of waiver" are *not* for the courts if "the parties clearly and unmistakably provide otherwise"); *Mulvaney Mech.*, 351 F.3d at 45–46 (same); *see also CMS Inv. Holdings, LLC v. Castle*, 14-cv-9381 (SHS), 2016 WL 4557115, at *5 (S.D.N.Y. Aug. 31, 2016) (the presumption "that courts decide . . . whether a party has waived arbitration by pursuing related litigation . . . may always be overcome by clear and unmistakable evidence that the parties intended to shift this decision-making authority to the

arbitrator") (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011)).  Plaintiff claims *Chevron* is distinguishable, but identifies no meaningful difference between questions of express and implied waiver.  *See CMS Investment*, 2016 WL 4557115, at *6 ("The Court can discern no relevant difference between these two types of waivers.  The waiver [by litigation conduct] at issue in this action does not go to the enduring 'validity' of the arbitration agreement any less than the waiver addressed in *Chevron*.").  Further, Plaintiff offers no authority whatsoever holding that parties may not delegate waiver-by-litigation-conduct issues to the arbitrator.  Indeed, *none* of the cases cited by Plaintiff even involved a delegation provision.  *See* AB62–63 & n.19.

Finally, Plaintiff seeks to prevent this Court from reaching the merits of the other arbitrability issues (waiver, enforcement by Mr. Kalanick, etc.) by simply declining to respond to Uber's arguments.  *Compare* AB60–64, *with* AOB41–61.  By failing to respond, however, Plaintiff has waived these issues—another good reason for this Court to compel arbitration.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (arguments not made in parties' briefs are waived).  Plaintiff seeks to avoid application of ordinary waiver rules, claiming that appellees are not subject to them.  This is incorrect.  *E.g.*, *id.* at 117–18 (appellee waived objection to appellant's argument by not addressing in brief).  The cases Plaintiff cites to the contrary all address the inapposite question whether a party

27

that was appellee *in a prior appeal* waives arguments first made in a subsequent appeal between the same parties.  AB63–64.

In sum, because the Arbitration Agreement delegates all issues of arbitrability to an arbitrator, this Court should remand with instructions to compel arbitration of all remaining issues.

## CONCLUSION

For the foregoing reasons, the Court should reverse and remand with instructions to compel arbitration of Plaintiff's claims.

December 13, 2016

Respectfully Submitted,

*/s/ Theodore J. Boutrous Jr.*

Theodore J. Boutrous Jr.
Lead Counsel

Reed Brodsky
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
(212) 351-4000

Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
(213) 229-7000

Cynthia E. Richman
Joshua S. Lipshutz
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Appellant*
*Uber Technologies, Inc.*

28

Karen L. Dunn
William A. Isaacson
Ryan Y. Park
BOIES, SCHILLER & FLEXNER
LLP
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
(202) 237-2727

Peter M. Skinner
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, NY 10022
(212) 446-2300


*Attorneys for Appellant Travis Kalanick*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This brief complies with Fed. R. App. P. 32(a)(7)(B)(ii) and Local Rule 32.1(a)(4)(B) because it contains 6,996 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.

December 13, 2016                                     /s/ Theodore J. Boutrous Jr.
_____                    _____
Date                                                              Theodore J. Boutrous Jr.

30

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of December 2016, a true and correct copy of the foregoing Appellant's Reply Brief was served on the following counsel of record in this appeal via CM/ECF, pursuant to Local Rule 25.1 (h)(1) & (2).

Brian Marc Feldman, Esq.
Edwin Michael Larkin, III, Esq.
Jeffrey A. Wadsworth, Esq.
Gregory M. Dickinson, Esq.
Harter Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, NY 14604

Matthew L. Cantor, Esq.
Ankur Kapoor, Esq.
Constantine Cannon LLP
335 Madison Avenue, 9th Floor
New York, NY 10017

Bryan L. Clobes, Esq.
Ellen Meriwether, Esq.
Cafferty Clobes Meriwether & Sprengel, LLP
1101 Market Street, Suite 2650
Philadelphia, PA 19107

John Christopher Briody, Esq.
James Hartmann Smith, Esq.
McKool Smith, PC
1 Bryant Park, 47th Floor
New York, NY 10036

*/s/* Theodore J. Boutrous Jr.

Theodore J. Boutrous Jr.